ELI VAN BROCKLEN, Appellant, *v.* GEORGE B. SMEALLIE, Respondent.

A vendor of personal property not delivered, has three remedies against the vendee in default; he may store the property for the buyer and sue for the purchase price; he may sell the property as agent for the vendee and recover any deficiency resulting, or may keep the property as his own and recover the difference between the contract and the market price at the time and place of delivery. This rule covers every species of personal property.

In case the vendor elects to make a re-sale, this need not be at auction unless that is the customary method of selling such property; nor is notice of the time and place of sale always essential.

The parties hereto entered into a contract in writing by which the plaintiff agreed to sell and convey, and defendant to purchase, the interest of the former in a partnership, the assets of which consisted of real estate, stock on hand, etc. Defendant refused to perform; plaintiff offered performance and thereafter served a notice upon defendant that he had made diligent effort to sell since the latter's refusal; that the best offer received was $2,500 less than the contract price, and if he heard nothing to the contrary he would accept the offer and hold defendant for the resulting loss. Defendant paid no attention to the notice, and plaintiff thereupon sold his interest to his co-partners for $2,500 less than the contract price. No claim was made but that the sale was fair and productive of the best price possible to be obtained. In an action to recover damages for breach of the contract, *held*, that plaintiff's partnership interest was personal property, and the title passed at once on the execution of the agreement; and that plaintiff had the right, at all events after tender and refusal, to sell as defendant's agent, and to recover of him the deficiency. *Van Brocklen* v. *Smeallie* (64 Hun, 467), reversed.

(Argued October 6, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 2, 1892, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for a breach of contract.

The provisions of the contract and the facts, so far as material, are stated in the opinion.

*John M. Carroll* for appellant. The court erred in deciding that the plaintiff was not entitled to recover as damages the difference between the contract price and the price obtained upon the re-sale, and also in holding that the plaintiff was entitled to recover only six cents damages, and in directing a verdict therefor. (*Duston* v. *McAndrew*, 44 N. Y. 72, 78 ; *Hayden* v. *Demlets*, 53 id. 426, 431 ; *Mason* v. *Decker*, 72 id. 595, 599 ; *Sawyer* v. *Dean*, 114 id. 469, 481 ; *Morss* v. *Gleason*, 64 id. 204.) The one-third interest in the property of the partnership of Snyder, Van Brocklen & Hull which the defendant agreed to purchase was personal property. (*Tarbell* v. *West*, 86 N. Y. 280, 287; *Morss* v. *Gleason*, 64 id. 204, 207, 208 ; *Statts* v. *Bristow*, 73 id. 264, 267; *Menagh* v. *Whitwell*, 52 id. 146, 158, 160, 161 ; Lindley on Part. 102; Story on Part. § 201.) If the property the defendant agreed to purchase had been real estate (while in fact only a small part of it — the mill — could be denominated as such), under the circumstances in this case, the rule of damages claimed by the plaintiff should be applied. The same reasons for the application of the rule as to personal property exist. (2 Suth. on Dam. 198 ; *Bowser* v. *Cessna*, 62 Penn. St. 148 ; *Lewis* v. *Lee*, 15 Ind. 499 ; *Miller* v. *Collyer*, 36 Barb. 250.) If the measure of the damages is the difference between the contract price and the market value, as claimed by the defendant, the amount obtained on the re-sale is evidence of the market value, and the court should have submitted the question of the amount of damages to the jury, instead of directing a verdict for nominal damages. (*Pollen* v. *Le Roy*, 30 N. Y. 549 ; *Bigelow* v. *Legg*, 102 id. 653.)

*L. A. Serviss* for respondent. The plaintiff sold the property for less than its value. The price for which plaintiff sold does not fix its value or afford the measure of damages. (*Wilson* v. *Holden*, 16 Abb. Pr. 133.) The measure of damages in this case is the difference between the price agreed to be paid by defendant and the actual value of the property at the time of the refusal to perform. There was no differ-

erce, and hence no damage, except nominal. ( *Wilson* v. *Holden,* 16 Abb. Pr. 133, 136, 137; *Cong. Beth Elohim* v. *C. P. Church,* 10 Abb. Pr. [N. S.] 484, 500; *Timby* v. *Kinsey,* 18 Hun, 255; *Pumpelly* v. *Phelps,* 40 N. Y. 59; *Griswold* v. *Sabin,* 51 N. H. 167; *Brinkerhoff* v. *Phelps,* 24 Barb. 100; *Walton* v. *Meeks,* 120 N. Y. 79; *Northridge* v. *Moon,* 118 id. 419.) The plaintiff resold the property at private sale, and upon the trial did not claim that the price obtained at such private sale was any evidence of its value or ask to go to the jury on that question. A fair public sale in the absence of other evidence is competent evidence of value. (*Pollen* v. *Le Roy,* 30 N. Y. 549.)

FINCH, J. The only question in this case is one of damages. The plaintiff and defendant entered into a written agreement whereby the former agreed to sell and convey, and the latter to purchase and receive, the plaintiff's undivided one-third interest in the partnership of Snyder, Van Brocklen, and Hull, whose assets consisted of real estate held as partnership property for the use of the business, stock on hand, and debts due or to become due; and who were manufacturers of knit goods, occupying their mill for that purpose. The contract was dated February 21st, 1891; the price to be paid was ten thousand dollars; and the formal instruments of sale were to be delivered and the price to be paid on or before the ensuing first of March. The partnership interest of the plaintiff was personal property (*Menagh* v. *Whitwell,* 52 N. Y. 146; *Morss* v. *Gleason,* 64 id. 204); and the title passed at once upon the execution of the agreement, for it is the general rule that a mere contract for the sale of goods, where the subject is identified and nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid, nor the goods sold delivered to the purchaser. (*Bradley* v. *Wheeler,* 44 N. Y. 502.) On the morning of February 28th, which was three days after the sale, the defendant announced to his vendor his purpose to "throw up" the contract and to "drop it right

there." He made no complaint as to its fairness or justice, no assertion of any deception or mistake, not even of any disappointment in his bargain, but merely said that he had partly promised to put some money into another enterprise and could not put it in both; that his brother was "kicking," and so he should not fulfill his agreement. Ordinarily, the vendee in default proffers some show of justification for his refusal to perform. This defendant had no excuse, but broke his contract because he chose to do so. The vendor, on the same day, served a written notice upon the vendee to the effect that he, the seller, was prepared to carry out the stipulations of the contract; that the papers on his part were executed and ready for delivery, and could be seen at the place where the exchange was to be made, and where they had been formally tendered to the vendee. As the first of March fell on Sunday, the notice offered performance on the day before or the day after, and insisted upon performance on the latter day at least. The defendant wholly disregarded the notice, and neglected and refused to fulfill his contract. On the second of April following the plaintiff gave a further written notice to the vendee that he had made diligent effort to sell the property since the latter's refusal to take it; that the best offer made was about $2,500 less than the contract price; that he was to give an answer by the next night; and that if he heard nothing to the contrary he should accept the offer and hold the vendee for the resulting loss. The defendant paid no attention to this notice, made no objection, asked no delay, requested no different mode of disposition, suggested no purchaser willing to pay more, but simply remained silent. The plaintiff thereupon sold the one-third interest to his partners, Snyder and Hull, for $7,500, not requiring the cash, but taking $6,000 in notes and the balance in specific articles of property. There is no proof, no pretense, not even a suggestion in the record, that this sale was not perfectly fair and productive of the best price possible to be obtained.

On these facts the plaintiff sued, seeking to recover the deficiency on the re-sale. In answer to inquiries of the defend-

ant, he testified that the interest contracted to be sold was worth $10,000 when the agreement was executed, and when it was to be performed, and such may have been its intrinsic worth, and yet its sale value may have been much less.

At the close of his case the defendant asked the court to rule as matter of law upon the facts, that the measure of damages was the difference between the value of the property at the date of the contract and the date of performance, and that since there was no such difference, the plaintiff was entitled only to nominal damages. The plaintiff objected to any such ruling, insisting that on the facts he was entitled to recover the deficiency on the re-sale. The court ruled that only nominal damages could be recovered, and directed a verdict for six cents, to which the plaintiff excepted. On appeal, the General Term affirmed the judgment.

The ground of that affirmance is certainly erroneous. The rule of damages applied was that which pertains to sales of real property, and which differs in scope and in principle from that applicable to sales of personalty. The opinion describes the contract as one for "the purchase of land," and all the authorities cited relate to sales of real estate. They have no application to the case in hand. The plaintiff had no land to sell and did not contract to sell any. What he did bargain about was his ultimate interest in the partnership assets when converted into money and after payment of all debts. His share of the net surplus then remaining was the only subject of sale, and all that he contracted to sell. His vendee would not and could not become a partner by force of the purchase, would gain no title to the assets as such, and could only force a sale of such assets, including the mill, and the distribution of the proceeds. It was said in *Tarbell* v. *West* (86 N. Y. 287), that "it is now well settled that a purchaser from one partner of his interest in the partnership, acquires no title to any share of the partnership effects, but only his share of the surplus, after an accounting, and the adjustment of the partnership affairs." The courts below, therefore, proceeded on a wrong basis, which led them into error.

In this court the rule of damages for a breach by the buyer of a contract for the sale of personal property, is perfectly well settled. (*Dustan* v. *McAndrew*, 44 N. Y. 78; *Hayden* v. *Demets*, 53 id. 426.) In each of these cases it was ruled that the vendor of personal property has three remedies against the vendee in default. The seller may store the property for the buyer and sue for the purchase price; or may sell the property as agent for the vendee and recover any deficiency resulting; or may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery. In the second of the decisions last cited, it was further held that the rule applied, not only to cases where the title passed at once, but also to cases where the contract was executory but there had been a valid tender and refusal. Where the second method is adopted and the vendor chooses to make a re-sale, that need not be at auction, unless such is the customary method of selling the sort of property in question, nor is it absolutely essential that notice of the time and place of sale should be given to the vendee. (*Pollen* v. *Le Roy*, 30 N. Y. 556.) Still, as the sale must be fair, and such as is likely to produce most nearly the full and fair value of the article, it is always wisest for the vendor to give notice of his intention to re-sell, and quite unsafe to omit it.

In this case the vendor acted strictly within the authority of our repeated decisions, and must be protected unless we are prepared, after misleading him, to reverse in some degree our own doctrine deliberately declared. What is now said is that we ought not to extend the vendor's right of re-sale to a species of personal property such as is involved in the contract before us. That is an erroneous and misleading statement of the problem. The adjudged rule covers every species of personal property. We have said of it that it is founded in good sense and justice, and that it " is the same in all sales, and in respect to property of every description." (*Pollen* v. *Le Roy*, *supra*.) The rule, therefore, needs no extension since it already covers the present case; and the real suggestion is that we

should begin for the first time to make exceptions to it, and here and now take out of its scope and operation the one specific sort of personal property which consists of an undivided interest in a partnership. I feel myself bound to resist strenuously, and to advise earnestly against, any such disintegrating exception, whose logical outcome will inevitably be to confuse the rule with narrow and arbitrary distinctions; to open it to attack in numerous directions; to make its operation fickle and uncertain; to breed needless litigation; and in the end to shatter the rule itself. In deference to the doubts of some of my brethren, I ought to state as briefly as possible a few of the reasons why I think no such exception should be made.

One such reason concerns the safety of the fundamental doctrine upon which the rule is founded, which does not admit of such an exception as is now proposed, and will itself be endangered by the resultant logic of the process. That doctrine is that the vendor of personal property has a lien, or something more than a lien, upon it for the purchase price, while it remains in his possession awaiting delivery, although the right of property has passed to the vendee. (Benjamin on Sales, book V, chap. 3, §§ 782, 783; Schouler on Personal Property, vol. 2, § 547.) The right of the unpaid vendor is deemed sometimes analogous to the pawnee's right of sale, and sometimes to the right of stoppage *in transitu.* Whatever it be, it is at least a lien upon the property sold for the purchase price so long as it remains undelivered, which lien the vendor may enforce by a sale, and then recover any balance of the contract price unrealized. Now, are we prepared to say that there is such a lien where the property is grain or hops, or a horse, but is not where it is an interest in a partnership? And upon what principle can we admit the lien and the consequent right to enforce it in one case and deny it in the other? If we undertake to make the distinction the inevitable result will be to shake or destroy the fundamental doctrine itself with consequences which we may easily see would be likely to prove disastrous.

But, again : those who would draw the line between kinds or classes of property subject to re-sale, and those not so subject to it, must tell us where it is located, and upon what principle it is to be drawn. That, I suspect, would prove at least a difficult, if not an impossible task. The effort has been many times made, but always hitherto has ended in absolute failure. At first the endeavor was to limit the remedy to the case of perishable property, but in *MacLean* v. *Dunn* (4 Bing. 722), that effort was resisted. Best, C. J., said of it : " It is admitted that perishable articles may be re-sold. It is difficult to say what may be considered as perishable articles and what not; but if articles are not perishable, *price is*, and may alter in a few days or a few hours. In that respect there is no difference between one commodity and another." " And," he added, " we are anxious to confirm a rule consistent with convenience and law. * * * The goods may become worse the longer they are kept; and, at all events, there is the risk of the price becoming lower." And so the rule was not confined merely to perishable property.

Another line of distinction is that between goods and merchandise and things in action; but we are not at liberty to draw that line in this state, even if it were possible to do it upon any logical ground. In *Porter* v. *Wormser* (94 N. Y. 442), the contract was for the sale of government bonds, and in denying the right of the vendor to re-sell, Judge Andrews put it upon the ground that the vendee was not in default, adding : " The contract to carry had not expired, and the sale cannot be regarded as the exercise by a vendor of personal property, of a right to re-sell on account of the vendee, and to charge the latter for the loss, for the plain reason that such right in any given case does not come into existence, and can be exercised only after default by the vendee." There was no suggestion that the rule did not apply to things in action, and he cited *Dustan* v. *McAndrew* (*supra*), and *Mason* v. *Decker* (72 N. Y. 595).

The latter case shuts off another possible ground of distinction which might be that the rule only applies to such personal

property as is the subject of general traffic, and has a market value. . In that case, the thing sold was shares of the stock of a construction company which was badly in want of funds, and struggling, by an issue of bonds to its friends, to procure means to live. This court held that the vendor had a double remedy, and might, as one of them, re-sell the stock after tender to the vendee in default, and recover the resultant loss. So that the rule not only covers things in action, but also those which are not the subject of general dealing, and cannot be said to have a market value.

This last case, in principle, comes very near to the one at bar. The interest of a stockholder in the corporate property represented by his stock is nothing more than a *pro rata* share in the property of the company remaining after the payment of debts and expenses, with the intermediate right to share in the profits. (*Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 216.) That is exactly the description of the interest of a partner in a partnership. That one is incorporated and the other not is the sole difference between them without at all affecting the common and identical character of the property owned in each. It seems to me the case must be decisive.

But I draw another inference from it, and that is the wide and dangerous sweep of the doctrine contended for in its application to stock transactions. I suppose nothing to be more common than sales of stocks by vendors for account of a defaulting vendee and a recovery of the balance unrealized. Logically that must stop if the exception here contended for be allowed, for I take it that none of us, however astute, can stand upon so thin a distinction in the doctrine under consideration as that between a corporate and non-corporate interest in capital and assets.

I may be permitted to add that I can see no injustice in the application of this rule to the present case. Beyond any question the defendant could have been sued for the whole purchase price, and if solvent could have been made to pay the entire $10,000. If he deemed the re-sale for $7,500 less than could be or ought to be realized, he had the privilege of pro-

tecting himself by procuring a more liberal purchaser or taking the property and controlling its sale for himself. He did neither. He kept silent. He defiantly broke his contract and with some natural triumph stands ready to pay the six cents. That is not enough. He should pay the deficiency resulting from the sale.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except ANDREWS, Ch. J., not voting.

Judgment reversed.