SHERMAN PETRIE, Respondent, *v.* ELVERTON C. STARK and Another, Appellants.

*Direction of a verdict — vendor's lien on personal property — enforcement and collection of purchase price not obtained on the sale — action in trover.*

Upon the review of a judgment, entered upon the verdict of a jury directed by the court, that view of the evidence must be taken which is most favorable to the party against whom the verdict was directed.

The vendor of personal property has a lien, and something more than a lien, upon it for the purchase price while it remains in his possession awaiting delivery, although the right of property has passed to the vendee. Upon default in the payment therefor, the vendor, so long as the property remains undelivered, has the right, upon notice to the vendee, to sell the property and recover from the vendee any balance of the contract price not realized upon such sale.

To entitle the plaintiff to recover in an action in trover there must have been possession of the property in question by the plaintiff, or there must be an existing right to take immediate and actual possession thereof.

APPEAL by the defendants, Elverton C. Stark and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 24th day of October, 1892, upon the verdict of a jury directed by the court after a trial at the Oneida Circuit, and also from an order made on the 6th day of October, 1892, and entered in said clerk's office denying the defendants' motion for a new trial made upon the minutes, with notice of an intention to bring up for review on such appeal all the objections and exceptions taken in the case and the motion to set aside the verdict and for a new trial.

In the complaint it is alleged that on or about August 9, 1890, the defendants unlawfully took possession of and unlawfully converted and disposed of to their own use, about 3,000 tons of ice situated or contained in an icehouse at North Beach (so called) of Oneida lake, N. Y., such ice being then in the lawful possession of the plaintiff and his property and of the value of $18,000, and that afterwards, and before the commencement of this action, the plaintiff demanded of the defendants the return of the property, which was refused.

In the answer, after a denial of all the allegations of the complaint, except the allegation that defendants were partners, it is alleged that in or about March, 1890, the plaintiff entered into an

executory contract with G. W. Marcellus & Co. for the purchase of the ice in question; that on and prior to the first day of August the plaintiff wholly defaulted in performance of this contract and forfeited his right and interest in the ice; that the plaintiff never had possession of the ice, but the same was always in possession of the vendors, Marcellus & Co.; that on the .9th of August, 1890, Marcellus & Co., after plaintiff's default and on due notice to him and the public, sold the ice at public auction to the highest bidder, there being about 1,200 tons; that at said sale the defendants purchased the ice in good faith for the gross sum of $3,100.

The action was commenced October 11, 1890.

*Tuttle & Ransom,* for the appellants.

*Hyland & Zabriskie,* for the respondent.

MERWIN, J.:

The plaintiff bases his claim in this case on a written contract between himself and Marcellus & Co., bearing date March 27, 1890. In this contract it is provided as follows:

"The parties of the first part (Marcellus & Co.) hereby sell and convey unto the party of the second part (Petrie) all of the ice now being in their icehouse situated and located on the lot purchased by said G. W. Marcellus & Co., of Spencer, at Sylvan Beach, New York (said icehouse being located on North Beach, so called, of Oneida lake), for two dollars per ton, forty-five cubic feet to the ton, house measurement, the same to be measured by the parties hereto on or before March 31st, 1890; the parties of the first part hereby agree to complete the icehouse containing said ice at once, the same to be double sided and filled between boards with straw, or tan bark, and the roof to be tight, so as to shed water, and the ice to be properly covered with hay, to be paid for upon the following terms and conditions, viz.: The said party of the second part is to pay to the parties of the first part two thousand dollars, cash down, to be applied and be a payment for the last ice taken from said icehouse, and the said party of the second part is to pay parties of the first part for the balance of said ice as fast as same is taken out of said icehouse, all of said ice to be taken out of said icehouse and paid for by the party of the second part, on or before August 1, 1890."

At the time of the execution of the contract the plaintiff paid $2,000 in cash, as required by the contract. The measurement was not made by the parties at the date specified, but a measurement was made by Marcellus & Co. at about that time, and the amount was found to be 3,422 $\frac{65}{100}$ tons. This measurement was submitted to plaintiff, and he, on May 6, 1890, in writing, assented to its correctness. In this writing he also stated as follows: "And I do hereby, in consideration of the premises, agree to allow them. and pay for said ice under said contract at such measurement. Measurement from bottom of sills; if not so to be made so."

At the trial the plaintiff claimed that he went into possession of the ice, and that prior to August first Marcellus & Co. extended his time in which to take away the ice to September 1, 1890. The defendants, however, gave evidence tending to show the contrary of both these propositions. The plaintiff did not take the ice away, and made no further payments. On the 5th of August, 1890, Marcellus & Co. served on plaintiff a written notice, stating that, as he had failed to take and pay for the ice on or before August 1, 1890, as he had agreed to do in the contract, they would advertise the same for sale and sell it at public auction to the highest bidder, at the ice-house, on the 9th of August, 1890, at two P. M., and would hold him responsible for all losses, whether caused from shrinkage of quantity or the depreciation of prices. Accordingly, at the time and place stated, Marcellus & Co. sold the ice at auction to the highest bidder, and the same was purchased by defendants at the price of $3,100. It is conceded that the amount of the ice was then 1,607 tons. At the sale, and before it took place, the agent of the plaintiff forbade the sale, stating that the plaintiff owned the ice, and that Marcellus & Co. had no right to sell it. A day or two after the sale the plaintiff called on Mr. Stark, one of the defendants, and demanded the ice, stating that he had come prepared to pay anything there was against the ice, and Stark replied that he had resold the ice to other parties, and couldn't go back on that sale. The ice was then being shipped.

At the close of the evidence it was held by the court that the plaintiff was entitled to recover for the value of the ice, and that the only question for the jury was as to the value, and this was the only question submitted to the jury. The theory adopted seems to have

been that under the contract of March 27, 1890, the title of the ice passed to the plaintiff upon the delivery of the contract, and that, therefore, he could here recover for the full amount.

In considering this question we must, as to all the facts except the value of the ice, take that view of the evidence which is most favorable to the defendants. We must, therefore, assume that the plaintiff never had possession of the ice, and that there was no extension of the time within which he could take and pay for it. The plaintiff, therefore, was in default at the time Marcellus & Co. assumed the right to sell.

In *Van Brocklen* v. *Smeallie* (140 N. Y. 70, 76) the doctrine is laid down that the vendor of personal property has a lien, or something more than a lien upon it, for the purchase price while it remains in his possession awaiting delivery, although the right of property has passed to the vendee. And it is said : " The right of the unpaid vendor is deemed sometimes analogous to the pawnee's right of sale and sometimes to the right of stoppage *in transitu.* Whatever it be, it is at least a lien upon the property sold for the purchase price so long as it remains undelivered, which lien the vendor may enforce by a sale, and then recover any balance of the contract price unrealized." In *Crooks* v. *Moore* (1 Sandf. 297) it is said by the court of a sale of iron : " At the day appointed for the payment it was the defendant's (the buyer's) duty to call upon the seller for a delivery of the iron, pay its price, and take it away. On his default the seller had a right to sell it upon notice to him, and to look to him for the deficiency, if any, by way of damages for the breach of his contract." In such a case the vendor in possession is said to be the agent of the vendee for the purposes of the resale. (*Lewis* v. *Greider*, 49 Barb. 606 ; affd., 51 N. Y. 231. See, also, *Sands* v. *Taylor*, 5 Johns. 395 ; *Gilly* v. *Henry*, 13 Am. Dec. 291 ; 8 Mart. 402.) In 3 Parsons on Contracts (8th ed. 257) it is said : " A vendor of chattels has, as we have seen, a lien upon them by common law as long as they continue in his possession and the vendee neglects to pay or tender the price. By the sale, the general property vests in the vendee, but a lien or special property remains in the vendor, and, therefore, this special property will be a good defense in an action of trover. A part payment will not

divest this lien." The same view is taken in Story on Sales (§ 282), where it is said that a partial payment will not operate to destroy the lien on all the goods, as every single portion of the property sold is covered by a lien for the smallest fraction of the price. (See 21 Am. & Eng. Ency. of Law, 605.) So, in 1 Jones on Liens (§ 840) it is said that the vendor may retain the goods still in his hands, not only for the price of such goods, but also for the price of any part of the goods already delivered, citing *Ex parte Chalmers* (L. R. [8 Ch.] 289). (See, also, *McFarland* v. *Wheeler*, 26 Wend. 467.) In Benjamin on Sales (pt. 1, book 5, chap. 3, p. 654 of 2d ed.) it is stated, as one of the rules to be deduced from the authorities, that in the case of resale a buyer in default cannot maintain trover against the vendor, being deprived by his default of that right of possession without which trover will not lie.

This reference to authorities makes it reasonably clear that at the time of the auction sale, upon the facts, as we must assume them to be, the plaintiff was not entitled to the possession of the ice. The plaintiff was in default. Marcellus & Co. had a lien at least upon all except the last 1,000 tons, and plaintiff's claim on that, if he had any superior to the claim of Marcellus & Co. for the balance of the purchase money, could not be made effectual until all the other ice there was taken and paid for. To recover in trover there must have been possession of the property by the plaintiff, or there must be an existing right to take immediate actual possession of it. (*Clements* v. *Yturria*, 81 N. Y. 285, 290.)

Of the 1,607 tons sold it is clear that Marcellus & Co. had the right to sell 607 tons. Therefore, the ruling at the trial that the plaintiff could recover for the whole was not correct and a reversal would follow. Whether the lien of Marcellus & Co. extended to the balance of the ice and for the whole balance of the purchase money, or whether the plaintiff, by failing to make at or before the auction sale any specific claim for the last 1,000 tons, lost any claim which he might have had for that against the purchasers at the sale, and was remitted upon that subject to an action against Marcellus & Co., are questions that need not be here decided. Upon another trial they may be developed more fully than they seem to have been at the trial under consideration.

The case of *Hudson* v. *Swan* (83 N. Y. 552) is cited on the sub-

ject of a waiver by defendants of any benefit under any lien that Marcellus & Co. had. I do not think that case is applicable. The right of Marcellus & Co. to sell was put in issue by the answer, and I find nothing in the pleadings or in the course of the trial that would amount to a waiver of any claim under a lien. The contract and the attendant circumstances which indicated a lien were put in evidence without objection as to the pleadings. Besides the general denial put at issue the ownership of plaintiff and also his right to the possession.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.