JOHN A. MANN and Others, Respondents, *v.* THE NATIONAL LINSEED OIL COMPANY, Appellant.

*Contract — its intention indicated by the acts of the parties — right of a vendor upon default to sell — changing the character of property after default.*

Where a vendee refuses goods tendered, the vendor may sell the property and hold the vendee for the deficiency.

Such a sale need not be at auction, nor upon notice to the vendee, although, as bearing upon the question of the fairness of the sale, it is prudent to give notice.

Under the terms of a contract raw linseed oil was to be tendered to the vendee "in good cooperage," but it appeared from letters exchanged between the parties that the oil was to be barrelled only for delivery.

*Held,* that the fact that the oil was manufactured and existed in bulk at the time of a tender was a sufficient compliance with the terms of the written agreement.

After the vendee had refused the tender, the vendor, finding that there was a demand for boiled linseed oil, subjected some of the raw oil (so tendered) to that process and sold it at an advanced price, the excess in which represented exactly the expense of boiling.

*Held,* that the result, so far as the rights of the vendee were concerned, was substantially the same, and that the boiling of the oil merely facilitated its sale and did not prejudice the rights of the vendor.

*Semble,* that in passing upon a contract the court will give it a construction in accordance with the intention of the parties indicated by their acts done under it and their correspondence in regard to it.

APPEAL by the defendant, The National Linseed Oil Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 8th day of June, 1894, upon the verdict of a jury directed by the court after a trial at the Erie Circuit, and also from an order entered in said clerk's office on the 23d day of August, 1894, denying the defendant's motion for a new trial made upon the minutes.

On September 20, 1892, the parties entered into a contract whereby the defendant, an Illinois corporation, during the period ending September 1, 1893, agreed to receive from the plaintiffs (who were engaged in the manufacture and sale of linseed oil at Buffalo, N. Y.) all the linseed oil manufactured by them which should not within that time be sold by them to others, and to pay for it within ten days the then Chicago price, in carload lots, less two per cent, and less two and three-fourths cents per gallon commission,

provided (1) that the defendant should not be required to receive in any one month more than 60,000 gallons, to be delivered in lots of 20,000 gallons or less ; (2) that the oil tendered to the defendant should be pure raw linseed oil well settled and in good cooperage f. o. b. cars at Buffalo ; (3) that the sale by the plaintiffs to other parties should not be made at better terms or at less than the then established market price of like quality and quantity in the district where sold ; (4) that upon all oil sold by the plaintiffs to others they should allow to the defendants one-fourth of one cent per gallon.

The plaintiffs delivered and the defendant received 60,000 gallons monthly up to and including June, 1893, and thereafter received none from the plaintiffs, who, in July and August, tendered in lots of 20,000 gallons each, 100,000 gallons to the defendant, which it refused to receive.

In this action, founded upon an alleged breach of contract, the plaintiffs recovered $8,837.20 damages.

*A. Rebadow,* for the appellant.

*Franklin D. Locke,* for the respondents.

BRADLEY, J. :

The obligation assumed by the defendant to receive linseed oil from the plaintiffs was dependent upon a tender of it by them. It was, by the contract, provided that the oil tendered should be in good cooperage f. o. b. cars at Buffalo. Did this necessarily imply intent that to render a tender effectual the oil should be in wooden barrels at the time the defendant was notified that the plaintiffs were ready and offered to make the delivery ? The oil was by the plaintiffs kept in iron tanks from which it was taken and put into barrels or other vessels required for use in its transportation. It appears that wooden barrels are not suitable to contain linseed oil in storage as it will more or less escape by leakage from them. The parties, however, recognized and adopted such a construction of the contract as did not require the plaintiffs at the time of the tender, nor until instruction for shipment was given them, to put the oil so tendered into barrels. This was the method adopted by the plaintiffs at the outset and understood by the defendant. By its letter to plaintiffs

of date June 15, 1893, the defendant says: "Under the contract you have the right to deliver when we send you instructions, but we are not bound to receive on your tender." By its letter of a later date it adds: "Under our, construction of the contract we are at liberty at any time during the month to give you shipping instructions according to our convenience. Therefore, all that is necessary for you is to give us notice of the quantity that you intend to tender, then in due time and at our convenience we will tell you what to do with it."

Soon after the contract was made the defendant expressed a desire to have oil shipped in oil-tank cars, which the plaintiffs consented and made preparations to do, and a considerable quantity of oil in that manner was delivered to the defendant and shipped to such places as the defendant directed. The tank cars were furnished by it or under its direction. By its letter to the plaintiffs of date June 23, 1893, the defendant, after referring to the fact that a tender of 20,000 gallons had been made, says: "Please have the amount above named, 20,000 gallons, put in first-class cooperage." Then follow some further instructions. It thus appears that it was contemplated by the parties, and such was the practical construction of the contract, that it was only requisite that the plaintiffs have the oil in their tanks ready to be put into vessels for transportation at the time of the tender or offer to deliver.

And inasmuch as the plaintiffs had on hand ready for delivery the several quantities of 20,000 gallons each, which they tendered in July and August, 1893, and constituting the 100,000 gallons which they also had on hand for delivery, the tender to the defendant was effectual. Not only the reasonable construction of the contract, but that practically given to it by the parties in the progress of its performance, was such as not to require that the oil be in cooperage at the time of the tender. The readiness at that time to put it in barrels when notified of the defendant's acceptance was all that was essential to give effect to the offer to deliver. (*Hayden* v. *Demets*, 53 N. Y. 426.) The defendant, by its refusal to receive the oil, was put in default, and became liable at the election of the plaintiffs to pay for it or to pay such damages as they sustained by the breach of the contract on the part of the defendant. In due time after the default of the defendant the plaintiffs proceeded to sell and sold.

that oil on the account of the defendant, and assuming, as the evidence permits, that they sold it fairly and for the best price they could get for it, the plaintiffs were entitled to recover the deficiency, that is to say, the amount derived from the sale, less than that to which they were entitled by the contract. (*Dunstan* v. *McAndrew*, 44 N. Y. 72; *Mason* v. *Decker*, 72 id. 595.) Nor was it necessary that the sale be at auction or upon notice to the defendant, although as bearing upon the question of fairness of a sale in such case it is usually prudent to give such notice. (*Pollen* v. *Le Roy*, 30 N. Y. 549; *Van Brocklen* v. *Smeallie*, 140 id. 70.)

The contract provided that the defendant should receive all the linseed oil manufactured by the plaintiffs " which shall not be sold by them to other parties." It is now urged on the part of the defendant that the plaintiffs did not show upon the trial that they had made any effort to sell the oil tendered before it was offered to the defendant. No such question was specifically raised upon the trial. If it had been and such fact had been deemed essential, it may be that it would have been supplied by proof. It may be observed that by the contract the sales other than to the defendant were so restricted as not to permit the plaintiffs to sell to others " on better terms or at less than the established market price," which it seems was practically regulated by the defendant's circulars. While it was contemplated by the contract that the plaintiffs would under such restrictions make sales to others, it did not in terms impose upon them an effort to do so. The apparent purpose of the contract was to give to the defendant the control of the market for the oil manufactured by the plaintiffs, and with a view on the part of the defendant to realize a profit from its performance. The contention that the want of evidence of an effort to sell the oil in question to others before the tender to the defendant is in the way of the plaintiffs' recovery is not supported by the record on this review.

The contract provides for the sale of raw linseed oil only. After the default of the defendant a portion, less than one-third of the oil, was for the purposes of the sale thereof boiled. It is insisted on the part of the defendant that the part of it subjected to that process was thereby taken from the operation of the contract,

and, therefore, the defendant is not chargeable with the deficiency arising from the sale of that portion of the oil.

It is true that the defendant cannot be charged to its prejudice by the conversion from raw into boiled oil.

It appears to have been no detriment to the defendant. The evidence tends to prove that there was a demand for boiled oil, and that this was boiled to facilitate the sale. The price for which it sold was three cents per gallon more than that for raw unboiled oil, and such increased price was just the expense of boiling the oil. The result, in which the defendant is concerned, was the same as if a market could have and had been found for it unboiled. The objection relating to the sale of the oil which was subjected to that process for market and founded upon that fact is not as matter of law tenable. This was deemed by the plaintiffs necessary to render it readily marketable and to enable them to consummate the sale which they by reason of the defendant's default were permitted to make on its account.

The further question has relation to sales of oil made by the plaintiffs to the New York, Lake Erie and Western Railroad Company in the period covered by the contract. . It is insisted that such sales were made for less than the established prices and in violation of the contract. It seems that the prices were deemed fixed by the schedules or circulars issued from time to time by the defendant, and that those were the prices of the oil delivered at the places where the buyers accepted it, and when transported to them they took it at those prices, less the freight charges upon it. In other words, the freight was deducted from such prices. The sales made to the railroad company were made for delivery at certain points on its line, and although it was taken by that company upon its cars at Buffalo, the oil was transported upon its road to the several points designated, and to treat the oil as delivered at those points at the established price the freight was deducted from it. This practically placed the railroad company as a purchaser on the same footing as that of other purchasers. The oil sold to the company amounted to only about $3,000, and if it had been treated as delivered at Buffalo at the established price, only a small sum more than was would have been realized from those sales. There seems to be no substantial reason for the charge that the plaintiffs in the sales to the railroad

company failed in the observance or performance of the contract on their part. The motion in behalf of the parties at the close of the evidence for the direction of nonsuit and verdict raised questions of law only, and as no request was made to submit anything to the jury, the entire case was left to the consideration of the court, and in the direction of the verdict for the plaintiffs the court is deemed to have determined adversely to the defendant whatever questions of fact there were for consideration. (*Ormes* v. *Dauchy*, 82 N. Y. 443; *Dillon* v. *Cockcroft*, 90 id. 649.)

No other question requires consideration.

The judgment and order should be affirmed.

DWIGHT, P. J., LEWIS and WARD, JJ., concurred.

Judgment and order affirmed.