GANDÍA, PLAINTIFF AND APPELLEE, *v.* PORTO RICO FERTILIZER CO., DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 1, in an Action to Recover Dividends.

No. 2474.—Decided May 9, 1924.

APPEAL—PARTIES—QUESTION OF LAW—QUESTION OF FACT.—This court refused to pass upon the merits of a certain question because it was of the opinion that all of the necessary parties were not before it, and from that decision an appeal was taken to the United States Circuit Court of Appeals for the First Circuit, which reversed the judgment on the ground that all of the necessary parties were before the court and remanded the case for further proceedings not inconsistent with its opinion. *Held:* That in deciding a question of law the Circuit Court did not intend to bind the Supreme Court of Porto Rico on questions of fact.

PURCHASE AND SALE—PAYMENT—DELIVERY.—When the terms of a sale are agreed upon and the bargain is struck and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as to the parties, without actual payment or delivery; and when the object of the sale or proposed sale is a specific thing, the title is immediately transferred, especially when nothing is to be done by the seller.

The facts are stated in the opinion.
*Mr. C. Coll y Cuchí* for the appellant.

*Messrs. J. B. Soto* and *J. Guzmán Benítez* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This case comes before us on mandate from the Circuit Court of Appeals wherein the judgment of the Supreme Court of Porto Rico, in so far as it reversed the judgment of the district court, was reversed and the case was remanded to this Supreme Court for further proceedings not inconsistent with the opinion of the Circuit Court of Appeals. On the case being sent back we first heard counsel informally at Chambers on the effect of the mandate and then, on the 18th of December, set the case for further hearing on the 14th of January, 1924. At this public hearing counsel for Gandía refused to appear and filed instead a writing which was a protest against this court's considering the case on its merits, on the theory, apparently, that there was nothing left for this court to decide. Gandía, whom we shall call the appellee, apparently feared that something would be waived by appearing at this public hearing and hence we did not have the benefit of argument from him. In the aforesaid writing appellee referred to the attempt of the appellant, the Porto Rico Fertilizer Co., to have the Circuit Court of Appeals revise its judgment, but this motion for a rehearing and the action of the Circuit Court of Appeals are not duly before us, and even if they were we should feel bound to construe the action of the Circuit Court of Appeals as an affirmance of its previous judgment and order sending the case back to this court for further proceedings not inconsistent with the said opinion.

There were two appeals before the Circuit Court of Appeals—one from each of the parties to this litigation. The court said: "The question sought to be raised by Gandía on his appeal is one of law, while that sought to be raised by the Fertilizer Co. on its appeal is one of fact."

The question of fact raised by the Porto Rico Fertilizer Co. was definitely disposed of by the judgment and opinion

of the Circuit Court of Appeals. It is completely *res adjudicata*. In the appeal of the appellee, however, the court expressly held that therein it was considering a question of law and hence was not considering the facts that we ourselves had refused to consider, namely, in whom, after the dissolution of Gandía & Stubbe, was vested the title to the sixty shares of stock in the Fertilizer Company that the appellee is still claiming as his own.

In the course of the opinion of the Circuit Court of Appeals it was pointed out that this court, in so far as it reversed the judgment of the district court, did so on the ground that the evidence disclosed that J. D. Stubbe or his assignees were necessary and indispensable parties to the action, and said opinion contains further analysis of the action of this court, and at the end of the paragraph the reviewing court says: "So the legal question presented in No. 1594 is whether J. D. Stubbe or Stubbe Bros. were necessary and indispensable parties to the action so far as the judgment against the defendant as to the stock is concerned." Later on the reviewing court said that this court had refused to pass upon the question of whether a good and valid transfer had been made, on the ground that the necessary parties to the decision were not before this court. Toward the end of the opinion of the Circuit Court of Appeals the court says: "We are therefore of the opinion that the Supreme Court erred in reversing the judgment of the District Court on the ground that J. D. Stubbe or Stubbe Bros. were necessary and indispensable parties to this suit, and that its judgment in this particular must be reversed and the case remanded to that court for further proceedings not inconsistent with this opinion."

It is evident, therefore, that the only matter that the Circuit Court of Appeals was attempting to decide and which caused the reversal of the judgment of this court was the same matter for which we reversed the judgment of the district court, namely, the lack of necessary parties, *vel non.*

In the assignment of errors filed in this court by the appellant, the Porto Rico Fertilizer Co., the appellant set up as its second error the following: ''The court erred in holding that the complainant and appellee, Pedro Gandía, is the owner of the sixty shares of the Porto Rico Fertilizer Company to which the complaint refers.'' The appellant had a right, if all the parties were before the district court, and the Supreme Court, as is now the law of this case, that a disposition should definitely be made of this assignment of error. No such disposition was made by this court and, as we read it, no disposition was made of this assignment by the Circuit Court of Appeals.

It is true that the Court of Appeals in its opinion said as follows: ''If the necessary parties to its decision were before it the Supreme Court should have passed upon the question; and it would seem, in view of the evidence and the facts found by the district court and affirmed by it, that no other reasonable conclusion could be reached than that Gandía did not transfer the stock to Stubbe and that it was transferred by the Fertilizer Co. on its books to Stubbe Bros. either negligently or fraudulently.'' The Circuit Court of Appeals, of course, was not holding that the facts as found by the district court are binding on the Supreme Court of Porto Rico or on the Circuit Court of Appeals, but the court was only saying that it would seem that the facts as found would justify no other conclusion than that the stock in question had not been transferred. The Circuit Court of Appeals expressly limited itself to reviewing the question on which we reversed the district court. If the reviewing court had meant to pass upon the question of the alleged transfer and decide that question in favor of Gandía, the affirmance of the judgment of the district court would have readily accomplished the result. Under the mandate, however, we have felt it a duty to review the aforesaid second assignment of error, which, so far as we understand it, has not been reviewed by this court nor

by the Circuit Court of Appeals. The finding of the district court to which the Circuit Court of Appeals refers is as follows:

"That the plaintiff is the owner of the sixty shares of the Porto Rico Fertilizer Co. to which the complaint refers, the evidence not disclosing that Mr. Gandía has disposed of them in any manner, the plaintiff having proved his right of ownership by the certificate of incorporation and that of the amendments to the articles of incorporation of the defendant, which he produced as secondary evidence by reason of the failure of the defendant corporation to produce the original certificates of such shares notwithstanding its having been duly required by this court to do so, at the instance of the plaintiff.

"The deed of dissolution and liquidation of the mercantile partnership Gandía & Stubbe, upon stipulating that Mr. Gandía agrees to sell his shares to his partner, Mr. Stubbe, for a sum equal to their par value, is evidence that Mr. Stubbe considered Mr. Gandía as such owner, and such promise of sale could not have reference to the shares belonging to the partnership Gandía & Stubbe and corresponding to Mr. Gandía as a partner thereof, because those shares were all allotted to Mr. Stubbe, as may be seen from the deed itself and from the inventory and allotment. And it was also proved that Pedro Gandía and Johann D. Stubbe, the only members of the partnership Gandía & Stubbe, were the same persons who at that time had the management and control of the Porto Rico Fertilizer Company; and also that the said Johann D. Stubbe controlled the business and resolutions of the defendant.

"To controvert the evidence produced by the plaintiff, the defendant submitted to the court, among other evidence, a contract entered into between the Virginia Carolina Chemical Company and Gandía & Stubbe on June 20, 1913, to which the plaintiff objected on the grounds that several of its pages were written on thin paper, that the document was written in divers kinds of typewriters, and that one page did not fit in with the others; and owing to these circumstances the court must consider this document with some suspicion, but even giving it all its possible value and harmonizing it with the rest of the evidence, we do not see how that document, dated July 20, 1913, can destroy the facts appearing from the articles of incorporation sworn and subscribed to eight days later by the plaintiff, by Johann D. Stubbe, Héctor Cestero and Federico Stubbe, or those mentioned in the amendments to the said articles

of incorporation, sworn and subscribed to three years later, or the contents of the deed of dissolution and liquidation of the partnership Gandía & Stubbe with reference to this matter. And by reason of those sworn statements of the said Johann D. Stubbe and Federico Stubbe, the court cannot give credit to the testimony of these witnesses, nor to that of Arturo Trías who, as has been proved, was the secretary of the defendant corporation at that time.''

The district court made no attempt in its opinion to analyze the articles of dissolution. The appellant is right when it says that this court assumed that the sixty shares of stock had been transferred from Gandía to Stubbe. Of course, this assumption would have had to be considered as an *obiter dictum,* inasmuch as we only reversed the court below for the lack of necessary parties. We are quite satisfied, however, that by the articles of dissolution the sixty shares owned by Gandía were definitely sold to Stubbe and that the parties to the contract intended such a· sale and by their acts thereafter showed such intention.

Despite the decision of this court and the decision of the Court of Appeals that the sixty shares of stock up to the time of dissolution belonged to Gandía, the appellant is still insisting that the sixty shares of stock never belonged to Gandía. From its resumé of the evidence on this point we are satisfied that the 125 shares belonging to the firm of Gandía & Stubbe; the sixty shares belonging to Gandía; the 60 shares belonging to Stubbe, and the five shares belonging to other incorporations, in all 250 shares, were all treated as a block of shares and all under the control of the firm of Gandía & Stubbe as an entity in accordance with the pooling arrangement with the Virginia Chemical Com pany to which we have referred in our former opinion; *Gandía v. Fertilizer Co.,* 30 P.R.R. 350, 351. So much being premised, the fifth clause of the articles of dissolution transfers or fixes the title and possession of these 250 shares in Stubbe. His account is charged with $25,000, being the money equivalent of all the shares that were carried either

by Gandía or Stubbe or any of their associates in the Porto
Rico Fertilizer Company independently of the Virginia
Chemical Co. Said article 5 shows that Stubbe is charged
with the shares of stock in the Porto Rico Fertilizer Co.
while the account of Gandía is not charged with any shares
of the Porto Rico Fertilizer Co. The $25,000 covered the
whole 250 shares of stock in any way under the control of
Gandía & Stubbe or either of them and therefore in the
eighth clause we find the parties bargaining and selling the
60 shares that up to the time of dissolution had belonged
to Gandía.

But without this premise from the rest of the record, we
think that the articles of dissolution alone show the trans-
fer. While the eighth clause of the contract is expressed in
the future tense, so are various other clauses of the arti-
cles of dissolution. It was a form of tense used to show
what each of the parties would do on the signing of the
agreement and one of the last clauses of the articles makes
this more apparent. This clause shows that there were un-
divided dividends by reason of the benefits already accrued,
and then follow these words in Spanish: ''Y por la pre-
sente queda especialmente convenido que el señor Stubbe
pagará al señor Gandía las cantidades que de esta suma no
dividida sean declaradas de tiempo en tiempo como divi-
dendos de dicha corporación en la proporción de las accio-
nes que el señor Gandía vende al señor Stubbe,'' which may
be rendered: ''And it is hereby specially agreed that Stubbe
shall pay to Gandía such amounts as may from time to
time be declared as dividends of the said corporation from
the said undivided profits in the proportion of the stock
which Gandía is selling to Stubbe.'' The word ''vende''
is the indicative present of the verb ''vender'' and has the
same meaning as the English words ''is selling.'' The
Spanish language is rich in subjunctives and if there had
been a doubt as to whether Gandía was actually selling to
Stubbe, the form of the tense here used would surely have

been "venda." The right to these accrued benefits is made conditional on the consummated sale from Gandía to Stubbe.

We have very little doubt that Gandía would insist on these benefits by virtue of these articles of dissolution which he himself offered in evidence in the court below.

Sections 1353 and 1354 of the Civil Code of Porto Rico provide as follows:

"Sec. 1353. The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered.

"Sec. 1354. A promise to sell or buy, there being an agreement as to the thing and price, gives a right to the contracting parties to mutually demand the fulfillment of the contract.

"Whenever the promise to purchase and sell can not be fulfilled, the provisions relating to obligations and contracts of this Book shall be observed by the vendor and by the vendee, as the case may be."

These conclusions are harmonious with the development of the common law of England as shown in *Leonard v. Davis*, 1 Black, 476, that when the terms of sale are agreed upon and the bargain is struck and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as to the parties without actual payment or delivery. Other authorities to the same general effect are *Hatch v. Oil Co.*, 100 U. S., 131; *Terry v. Wheeler*, 25 N. Y., 520; *Van Brocklen v. Smeallie*, 140 N. Y., 70, 72; *People v. Mills Sing*, 183 Pac., 865, 24 R.C.L., 23.

It is generally held, too, that when the object of the sale or proposed sale is a specific thing, the title is immediately transferred, especially when nothing is to be done by the seller. *Tarling v. Baxter*, 23 Eng. Rul. Cases, 257, 23 R.C.L., 1347, and especially note 8 to show that the future tense may import the present tense.

If, however, some further action from Gandía was necessary to constitute delivery, the very complaint of Gandía

shows this to have been done. The eighth paragraph of the said complaint is as follows:

"Once the deed of dissolution of July 24, 1916, had been signed and by virtue of the promise therein made by the plaintiff to sell his shares to Johann D. Stubbe, the latter upon abandoning the house took along with him the certificates of the 60 shares of the plaintiff, who did not in any manner object because he had always trusted the said Stubbe and was persuaded that Stubbe would pay him the sum of Six Thousand Dollars ($6,000), which was the par value of such shares, immediately upon the plaintiff transferring them to him, which the latter has been unable to do not only because Stubbe has the certificates in his possession but also because he has refused to pay the plaintiff the said sum, alleging, according to information received by the plaintiff, that the 60 shares in question were allotted to him in the deed of dissolution for the payment of debts of Gandía & Stubbe."

In other words, Gandía stood by and consented and permitted that Stubbe should take possession of the specific articles the object of the alleged promise of sale.

At the trial, too, Cayetano Coll Cuchí was a witness for the complainant. He was necessarily vouched for by the party calling him. Section 156 of the Law of Evidence provides:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section one hundred and fifty-nine."

No attempt was made to impeach or attack the credibility of this witness, although perhaps some attempt was made to show that he was mistaken. He testified that Gandía had told him when witness asked Gandía to sign the transfer that he would enter a claim against Mr. Stubbe for the price of the sixty shares which was $6,000, and gave other testimony tending to show a transfer.

Gandía did not take the stand to contradict in any way

the testimony of Cayetano Coll Cuchí. In the course of our original opinion in this case, in discussing the payment of the $8,234.06, we exculpated Gandía from the necessity of taking the stand with regard to that dividend, but we were not considering then the possession or ownership of these sixty shares of stock. His failure to take the stand to tell anything about this transfer must come under the principle of evidence wilfully suppressed as set out in various articles of the Law of Evidence. Section 102, paragraphs 5 and 6; Section 162, last paragraph.

In one of the preliminary stages of this litigation where the attempt was made to get hold of the books of the Porto Rico Fertilizer Co., in the certiorari proceeding this court read the complaint as meaning that the sixty shares of stock had been transferred to Stubbe. This decision was rendered in 1917—*Gandía v. Texidor, District Judge,* 26 P. R.R. 36. What we said was that petitioner Gandía had sold to said Stubbe the sixty shares that he had in stock of the Porto Rico Fertilizer Co.

This was a case where on the original hearing the District Court of San Juan held, on the motion for a nonsuit, that Gandía had not proved his ownership to the sixty shares of stock. This we reversed on appeal. *Gandía v. Porto Rico Fertilizer Co.,* 28 P.R.R. 516. We have a fear, as sometimes happens on reversal, that the District Court of San Juan at the next trial leaned over the other way. The examination of the whole record convinces us that the sixty shares were definitely transferred to Stubbe by Gandía and therefore the judgment of the district court must be reversed in so far as it orders the defendant to carry on its stock and transfer book the sixty shares of the defendant corporation, to consider the plaintiff as one of the stockholders to the extent of the sixty shares, and to pay him whatever dividends are distributed from the profits of the defendant corporation; and to affirm, as it does affirm, the

said judgment in all other respects, including the imposition
of costs.

*Reversed in part.*

Chief Justice Del Toro and Justices Aldrey and Hutchi
son concurred.

Mr. Justice Franco Soto took no part in the decision of
this case.