WARD and another, Respondents, vs. AMERICAN HEALTH FOOD COMPANY, Appellant.

*May 8—September 8, 1903.*

*Contracts: Advertising in street cars: Leasing or personal services: When executed: Termination: Damages for breach: Pleading: Equitable counterclaim: Costs.*

1. Plaintiffs contracted to insert defendant's advertising cards in a certain number of cars on certain street railways "for the term of twelve months from July 10, 1900." Defendant was to pay therefor $470 per month—"the rent each month to be paid in advance;" and the contract provided that "nonuse of space from advertiser's act or omission is advertiser's loss." The cards were to be subject to the approval of plaintiffs and of the railway companies. Prior to July 10, 1900, plaintiffs procured the insertion of the cards as agreed, but it appears that

no particular space in particular cars was secured by them for the term of the contract. On September 27, 1900, defendant directed plaintiffs to remove the cards from all cars, but plaintiffs refused, and continued the insertion of the cards up to July 10, 1901. *Held*, that the contract was not in the nature of a lease or subletting of certain spaces in the cars, but rather in the nature of a contract for personal services. It was therefore not fully executed on July 10, 1900, when plaintiffs had procured the insertion of the cards, but was still executory at the time when defendant directed their removal.

2. The contract being executory, defendant had the right, by giving such notice, to stop further performance by plaintiffs, and thereby limited its further liability to damages for its breach of the contract.

3. In an action upon the contract, in which plaintiffs did not allege such breach or damages therefrom, but sought to recover the full contract price on the theory of full performance, it is *held* that they cannot recover damages for such breach, but only those monthly instalments of the contract price which had been earned or partially earned before the contract was terminated by defendant.

4. In an action upon contract, although defendant interposed an equitable counterclaim for reformation of the instrument, plaintiffs are *held* entitled to recover only the costs allowable under the statutes in actions at law on contract.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

Two actions are here consolidated, each to recover different instalments claimed to be due to the plaintiffs from the defendant upon the same written contract. It is undisputed that the plaintiffs are copartners doing business in the city of New York, and that the defendant is a Wisconsin corporation doing business in Milwaukee; that June 5, 1900, Isaac J. Cohn, the soliciting agent of the plaintiffs, was in Milwaukee at the defendant's office, and a written proposition was then and there drawn up and signed by the defendant in the words and figures following, to wit:

"June 5th, 1900.

"*To Ward & Gow:* You are hereby authorized to insert in the cars designated on the reverse side hereof, 1,050 copies

of our advertising card, size 11x21 inches each, one in each car up to that number, for the term of 12 months, from July 10th, 1900.

"In consideration thereof we hereby agree to pay to the order of Ward & Gow, the sum of four hundred and seventy dollars ($470) per month—the rent each month to be paid in advance at end of each month. Signs to be furnished by the advertiser.

"The advertiser reserves the right to cancel this contract on Aug. 10, 1900, by paying $92.50-100 additional, and giving notices in writing prior to August 10th.

"This contract is not binding unless approved by Ward & Gow. All payments must be made to their order. If any cash instalment, provided for herein, is due and unpaid for ten days, this contract may be terminated at their option. If for any cause before the termination of this contract the lessees of any of the car spaces herein included shall cease to have the right to maintain, control, or continue the advertising in or upon the cars of any railroad named therein, the right is reserved by Ward & Gow to cancel such portion thereof without prejudice to the whole. The form, wording, and illustrations of all signs is subject to their approval and that of the railroad company in whose cars they appear. Nonuse of space from advertiser's act or omission is advertiser's loss. Any loss of time or space not caused by the advertiser shall be made good by additional time or space. An essential condition of this contract is that advertiser's privileges cannot be assigned or sublet. Nothing omitted herefrom binds either party.

"Approved June 8th, 1900.
                    "[Signed] AMERICAN HEALTH FOOD CO.
                              "JOHN L. BEEBE, V.-Pres.,
                      "Address 270 So. Water St.,
      "WARD & GOW,                           Mil., Wis.
        "By LOUIS COHN, Manager.
      "500 cars N. Y. 'L.'
      "550 cars Brooklyn, N. Y.
      "One-half of each road."

Isaac J. Cohn then took such written proposition so signed by the defendant to the city of New York, where the same

was approved by the plaintiffs June 8, 1900, and stating therein that: "500 cars N. Y. 'L.'—550 cars Brooklyn, N. Y.—one-half of each road." On the same day of such approval the plaintiffs wrote to the defendant acknowledging the receipt of the contract, and therewith inclosed a duplicate of the same, duly approved by the plaintiffs.

On November 17, 1900, the plaintiffs commenced an action to recover the first four instalments of $470 each, amounting to $1,880, and the complaint therein alleged, in effect, that the plaintiff had in all respects complied with the terms and conditions of the contract, and had inserted 1,050 copies of the advertising card of the defendant, size 11x21 inches, one half in the N. Y. "L." and one half in the Brooklyn Railway Company; that such insertion commenced July 10, 1900, and continued from that date, and was still being continued; that the defendant had not exercised its right reserved in the contract to cancel the same by giving notice in writing prior to August 10, 1900, and that such contract had not been modified, but was in full force and effect, and that the four instalments mentioned became due and owing to the plaintiffs November 10, 1900, and were still due and owing from the defendant to the plaintiffs; and demanded judgment therefor, with interest on each instalment from the time it became due.

On August 30, 1901, the plaintiffs brought a second action for the eight additional instalments of $470 each, amounting to $3,760. The complaint in that action contained, in substance, all the allegations of the complaint in the first action, and, in addition, alleged that the plaintiffs had contracted for advertising space in the elevated street railways mentioned, and several others; that no part of any of such instalments had been paid, although demanded; and demanded judgment therefor, with interest on each instalment from the time it became due.

The defendant answered the consolidated actions by way

of admissions, denials, and counter allegations, and, among other things, in effect, denied the making of the contract as alleged, denied that the plaintiffs had complied with the contract, denied that the defendant had not canceled the contract or modified it, and alleged that the contract so made was for three months only and by mistake it named twelve months, that the time of the commencement for the contract was postponed for some time after July 10, 1900, named therein; that it was canceled after it had been commenced one month; and also alleged by way of counterclaim a mistake in making the contract in the respects mentioned, and asked to have the same reformed. The plaintiffs replied to the counterclaim.

A jury having been waived, the cause was tried by the court, and at the close of the trial the court found, in addition to the admitted facts mentioned, in effect, that June 12, 1900, the defendant sent the plaintiffs 1,050 cards to be placed as agreed; that June 19, 1900, the cards were received by the plaintiffs, and thereupon the plaintiffs placed or inserted 500 of such cards in the N. Y. "L" and 550 in the Brooklyn Elevated, and continued the insertion of such cards in the manner provided for in the contract from June 19, 1900, up to and including July 10, 1901, and that the plaintiffs had in all respects complied with the terms and conditions of the contract; (6) that the defendant did not exercise the right to cancel the contract; that the $92.50 additional therein mentioned was not paid by the defendant to the plaintiffs on August 10, 1900, and that no notice in writing was given by the defendant to the plaintiffs of its intention to cancel the contract prior to August 10, 1900; (7) that the contract so made was not changed or modified in any respect; (8) that at the time of signing the contract the officers of the defendant knew that Isaac J. Cohn was acting in the capacity of solicitor and was without authority to make or accept the said contract on behalf of the plaintiffs; (9) that, subsequent to the acceptance of the contract by the plaintiffs, no representa-

tion was made by them to the defendant that Isaac J. Cohn had any authority other than that possessed at the time the contract was entered into; that Isaac J. Cohn was not authorized by the plaintiffs to make, modify, or in any manner change the contract between the plaintiffs and the defendant; (10) that no agreement was made by Isaac J. Cohn on behalf of the plaintiffs or otherwise with the defendant, or any person acting on its behalf, whereby the terms of the written contract between the plaintiffs and the defendant were changed or modified in any manner or in any respect; (11) that the contract above set forth was the contract actually made and entered into by the plaintiffs and the defendant, and that no other or different contract was made between the parties, and that there was no mutual mistake in reducing the contract to writing, and that the contract was for the term of twelve months as stated therein; (12) that no part of the consideration provided for in the contract has been paid to the plaintiffs by the defendant; (13) that September 27, 1900, the defendant directed the plaintiffs, in writing, to remove from all cars their cards which had been inserted pursuant to the terms of the contract; that the plaintiffs refused to remove said cards; that at no time from July 10, 1900, up to and including July 10, 1901, could the plaintiffs get contracts to fill such space, notwithstanding they made due and diligent effort to obtain contracts in order to fill all the spaces under and controlled by them in such elevated roads; (13½) that August 24, 1900, the plaintiffs received a letter from the defendant dated August 22, 1900, stating, "Kindly let us know when our month expires, and cancel the contract thirty days from the extended date of the contract for the present;" (14) that all the allegations of the complaint in both actions are proven and true; (15) that the equitable counterclaim of the defendant has not been proven and is untrue.

And as conclusions of law, the court found, in effect, that

the contract was fully executed by the plaintiffs; (2) that there was due to the plaintiffs for principal $5,640, and for interest $491.62, making $6,131.62; (3) that the prayer for the reform of the contract be, and the same was thereby, denied; (4) that the plaintiffs are entitled to judgment dismissing the equitable counterclaim, and for a money judgment against the defendant for the amount last stated, with costs; and ordered judgment accordingly. From the judgment so entered the defendant appeals.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. W. Remington.*

For the respondents there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Wheeler P. Bloodgood,* of counsel, and oral argument by *Wheeler P. Bloodgood.* They contended, *inter alia,* that appellant contracted for and agreed to pay a stipulated sum for a certain space, whether it used it or not, and plaintiffs agreed to reserve such space. If this contract is to be governed by the principles governing leases, as held in the case of *Bours v. Kimball,* 46 Ill. App. 327, the law in New York is well settled that the recovery is the rent for the full term. *Clendinning v. Lindner,* 9 Misc. 682; *Gray v. Kaufman D. & I. C. Co.* 9 N. Y. App. Div. 115; *Reich v. McCrea,* 59 Hun, 625, 13 N. Y. Supp. 650; *Becar v. Flues,* 64 N. Y. 518; 18 Am. & Eng. Ency. of Law (2d ed.) 303, 304, and cases cited in note 7. On the other hand, if the contract be regarded as an executed sale of a chattel, where the vendee has taken possession and title passed, it is well settled under the authorities that the vendor may recover the price agreed. 2 Sutherland, Damages, § 347; Mechem, Sales, § 1618; *Hunter v. Wetsell,* 84 N. Y. 554; *McClure v. Williams,* 5 Sneed (Tenn.) 718; Schouler, Pers. Prop. § 528; *Mason v. Decker,* 72 N. Y. 595; *Quick v. Wheeler,* 78 N. Y. 300; *Hayden v. Demets,* 53 N. Y. 426; *Dustan v. McAndrew,* 44 N. Y. 72; 19 Ency. Pl. & Pr. 7.

The contract was not one of service. It shows on its face that plaintiffs undertook nothing requiring any skill. Defendant was to furnish the signs, and if it failed to furnish them it was its own loss. All the plaintiffs undertook to do was to sell, or lease, or license to defendant certain spaces in certain cars designated in the contract. The clause making the signs subject to approval was merely to give the right to prevent the space being used for immoral or improper purposes. See *Central L. & E. Co. v. Moore,* 75 Wis. 170, 43 N. W. 1124, note. Even though the contract be regarded as a contract for hire, the plaintiffs are entitled to recover the contract price. It is well settled that the measure of damage for the breach of a contract for services is the amount of compensation agreed upon. 5 Am. & Eng. Ency. of Law, 35; *Bergin v. Wemple,* 30 N. Y. 319; *Howard v. Daly,* 61 N. Y. 362; *Barber v. Knickerbocker L. Ins. Co.* 24 Wis. 630.

CASSODAY, C. J. Error is assigned because the court found as a matter of law that the contract "was fully executed by the plaintiffs on the 10th day of July, 1900." That is the day named in the contract upon which the plaintiffs were to commence performance; and the contract expressly provides that it should continue "for the term of twelve months from July 10, 1900." By the fifth finding of fact the court found that the plaintiffs commenced such performance June 19, 1900, and continued such performance "up to and including the 10th day of July, 1901." Manifestly, by some inadvertence, the wrong year is named in the conclusion of law mentioned. At all events, such conclusion cannot overturn the language of the contract and the express finding of fact mentioned. In other words, the plaintiffs have recovered in this action the $470 per month for doing the things they agreed to do in the contract during the whole of the twelve months which terminated July 10, 1901.

2. Counsel for the defendant contend that the time when

the performance was to commence under the contract—July 10, 1900—was, on or about that time, indefinitely postponed by correspondence and oral negotiations between defendant and Isaac J. Cohn, the soliciting agent of the plaintiffs in procuring the contract from the defendant. By the eighth, ninth, and tenth findings the court found, in effect, not only that Isaac J. Cohn never made any such agreement, but also that he never had any authority to make such an agreement, and that the defendant knew that he was merely "acting in the capacity of solicitor, and was without authority to make or accept the contract on behalf of said plaintiffs." Such findings of the court are abundantly supported by the evidence.

3. In and by the terms of the contract, the defendant reserved the right to cancel the contract August 10, 1900, by paying $92.50 additional, and giving notice in writing prior to August 10, 1900. Both complaints allege that the defendant failed to exercise such reserved right. The defendant took issue with such allegations, and alleges, in effect, that the "contract was duly annulled, discontinued, and canceled by due and sufficient notice in writing given by the defendant to the plaintiffs in due time and before the end of the first month." By the sixth finding the court found that the $92.50 was not paid by the defendant to the plaintiffs August 10, 1900; that no notice in writing was given by the defendant to the plaintiffs as therein agreed; and that the defendant had not exercised its reserved right to cancel the contract as therein stipulated. Such findings are abundantly supported by the evidence. It follows that the letter received by the plaintiffs from the defendant August 24, 1900, wherein they were told to "kindly let us know when our month expires, and cancel the contract thirty days from the extended date of the contract for the present," as mentioned in finding $13\frac{1}{2}$, did not have the effect of relieving the defendant from further liability on the contract.

4. The defendant insists by way of counterclaim that there was a mutual mistake in reducing the contract to writing, in that it should have been "for the term of three months from July 10, 1900," as actually made, instead of "for the term of twelve months from July 10, 1900," as written; and prayed a reformation of the contract accordingly. Such counterclaim was put in issue by the reply. The court, by the fifteenth finding, found that such counterclaim had not been proved and was untrue; and the evidence fully supports such finding.

5. The complaint in the consolidated action alleges, and the court found, in effect, that the plaintiffs had inserted the defendant's cards, and continued the insertion of such cards in the manner provided for in the contract, from June 19, 1900, up to and including July 10, 1901, and that the plaintiffs had in all respects complied with the terms and conditions of the contract on their part. The court further found, in effect, that September 27, 1900, "the defendant directed the plaintiffs, in writing, to remove from all cars their cards which had been inserted pursuant to the terms of the contract," but that "the plaintiffs refused to remove" the same. The defendant contends, in effect, that, as the contract was executory at the time such direction was given by the defendant, the giving of such direction had the effect to stop further performance on the part of the plaintiffs, and limit its further liability to damages sustained for the breach of the contract. On the other hand, the plaintiffs contend, in the language of the conclusion of law mentioned, "that the contract . . . was fully executed by the plaintiffs on the 10th day of July, 1900," the day on which, by its terms, it was to go into effect, notwithstanding the findings of fact that the defendant's cards were to be so inserted in cars by the plaintiffs "for the term of twelve months from July 10, 1900." Other stipulations in the contract show that the services of the plaintiffs were to continue for the whole year; and the com-

plaint alleges, and the court found, that such services did so continue from June 19, 1900, "up to and including the 10th day of July, 1901." Such finding would seem to be conclusive that at the time the defendant directed the plaintiffs "to remove from all cars their cards which had been inserted pursuant to the terms of the contract"—September 27, 1900—the contract was still executory for the balance of the year.

But the plaintiffs further contend that the contract was fully executed July 10, 1900, because prior to that date they had procured the insertion of the requisite number of cards in the cars of the two railways as agreed, and that, by the terms of the contract, "nonuse of space from advertiser's act or omission is advertiser's loss," and hence it is argued that the defendant was bound by the contract to pay for the spaces so procured by the plaintiffs, whether the defendant used them or not. The argument is plausible; but the real question is whether the nature of the contract is such as prevented the defendant from stopping further performance on the part of the plaintiffs by the direction given September 27, 1900, "to remove from all cars their cards," as mentioned. It appears from the evidence that no particular space in particular cars was secured by the plaintiffs. As late as September 10, 1900, they wrote to the defendant as follows: "Please forward us at once 250 cards, size 11x21, as we need same for display in the box cars in Brooklyn which will shortly be placed in service." That request was renewed September 22, 1900, "for a requisite number of cards for equipping the box cars of the Brooklyn Heights Railroad." The defendant, under date of September 24, 1900, replied by stating "that, as we have canceled our advertising with you for the present, you will not need any cards for the box cars of the Brooklyn Heights Railroad. When we renew our cards in your cars later in the fall, we will send new cards enough to cover all of the cars that we will use." These letters ob-

viously have reference to the necessary change from open cars to winter cars. The theory that the plaintiffs had procured such "spaces" from the railways by leases or otherwise, and then re-leased or sublet them to the defendant, cannot be maintained.

"A lease is a contract for the possession and profits of land and tenements on the one side and the recompense of rent or property on the other." 18 Am. & Eng. Ency. of Law (2d ed.) 597.

Here the defendant never had any possession or right to the possession of such cars, or any part of any of them. *Reynolds v. Van Beuren,* 155 N. Y. 120, 123, 49 N. E. 763. The case is peculiar, and it may be difficult to find adjudications in cases where the facts are similar. It has been held in New York:

"A contract whereby one person gives another the authority, for a stated compensation, merely to use a wall of a house for advertising purposes during a specified time, does not constitute a lease, so as to create the relation of landlord and tenant between the parties." *Goldman v. N. Y. Advertising Co.* 60 N. Y. Supp. 275.

So it has been held in Massachusetts:

"An agreement by the lessee of a building to allow a third person, in consideration of an annual payment by him, to place a sign upon the outside wall of the building for a stated time, is not a breach of a covenant in the lease not to underlet any part of the premises." *Lowell v. Strahan,* 145 Mass. 1, 12, 12 N. E. 401.

So it has been held in Maryland:

"A contract to display advertisements in a street car, the cards being subject to the approval of the advertising company," as here, "is one in which the other party relies upon the skill and experience of the company in making such displays, and hence is not assignable by the latter." *Eastern Advertising Co. v. McGaw,* 89 Md. 72, 42 Atl. 923.

In other words, it was there held that the contract was for personal services, and not even a license, much less a lease. We must hold that when the defendant directed the plaintiffs

to remove its cards, September 27, 1900, the contract remained executory for the balance of the year.

6. Being executory, did the defendant have the right, by giving such direction, to stop further performance on the part of the plaintiffs, and limit its further liability to damages sustained for the breach of the contract, as claimed by the defendant? Certainly there are numerous adjudications to that effect. Courts differ as to whether an action can be maintained for such breach before the time for the fulfilment of the agreement expires. *McCall Co. v. Icks,* 107 Wis. 232, 83 N. W. 300; *Hochster v. De La Tour,* 2 Ellis & Bl. 678. But that question is not here involved, since the time for such fulfilment had fully expired when the last action was brought. In the case last cited it was held by the Queen's Bench, Lord CAMPBELL, C. J., presiding, "that a party to an executory agreement may, before the time for executing it, break the agreement either by disabling himself from fulfilling it, or by renouncing the contract." That rule was followed by the supreme court of the United States in a learned and discriminating opinion by FULLER, C. J., reviewing the English and American cases, and it was there, among other things, held that:

"After the renunciation of a continuing agreement by one party, the other party is at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damages he has suffered from the breach of it. . . . The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due. As to the question of damages, when the action is not premature, the plaintiff is entitled to compensation based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself." *Roehm v. Horst,* 178 U. S. 1, 20 Sup. Ct. 780.

So in an early case in New York the party who had em-
ployed another person to do certain mechanical work at a
price agreed upon, after the work had been commenced coun-
termanded his directions and forbade the person so employed
to further execute the work; and it was held that the person
so employed had no right t˄ proceed with the work after he
was so forbidden. *Clark v. Marsiglia,* 1 Denio, 317; *Ameri-
can L. Ins. Co. v. McAden,*109 Pa. St. 399, 1 Atl. 256. So
it has been held in Vermont, that:

"In executory contracts a party has the power to stop the
performance on the other side by an explicit order to that
effect, by subjecting himself to such damages as will compen-
sate the other party for being stopped in the performance on
his part at that point or stage in the execution of the con-
tract." *Danforth v. Walker,* 37 Vt. 240, followed in *Davis
v. Bronson,* 2 N. D. 300, 303, 304, 50 N. W. 836; *Gibbons
v. Bente,* 51 Minn. 500, 53 N. W. 756, 22 L. R. A. 80.

In such cases it is held that an action cannot be maintained
to recover the contract price, but may be maintained to re-
cover damages for the breach of the contract. *Hamilton v.
McPherson,* 28 N. Y. 72, 76, 77; *Butler v. Butler,* 77 N. Y.
472; *Johnson v. Meeker,* 96 N. Y. 93, 97; *McMaster v. State,*
108 N. Y. 542, 15 N. E. 417; *Hinckley v. Pittsburg B. S. Co.*
121 U. S. 264, 7 Sup. Ct. 875. And yet in such an action
the party seeking to recover for the breach of the contract is
in duty bound to make reasonable exertions to keep down the
damages. Id. See, also, *Roper v. Johnson,* L. R. 8 C. P. C.
167; *Brown v. Muller,* L. R. 7 Exch. Cas. 319, 23 E. R. C.
527–530, and notes.

7. But this is not an action to recover damages by reason
of such breach of contract. As indicated, this is an action
to recover the contract price on the theory of full perform-
ance. Such is the only cause of action alleged in the com-
plaint. True, some evidence was admitted having a bearing
upon such question of damages, but such evidence was so ad-
mitted against objections that it was inadmissible under the

pleadings. As the breach of the contract is the gist of such an action, it is necessary that the complaint allege the particular breach; otherwise it will be demurrable. A failure to allege such breach cannot be cured, even by verdict. This is elementary. 4 Ency. Pl. & Pr. 937, 938, citing numerous cases; Abbott's Trial Ev. (2d ed.) 634, and cases there cited. In such cases the plaintiff is not entitled to prove a breach of contract not alleged, nor damages of a kind not necessarily resulting from the breach of contract alleged and proved, unless they are specifically stated in the complaint. Id. Thus it is stated in one of the works cited:

"The damages to be recovered upon an alleged breach of contract need not be averred where they are the necessary result of the breach complained of, but a full recovery may be had under the general allegation of damages in the complaint." 5 Ency. Pl. & Pr. 739.

"On the other hand, where the damages do not necessarily result from the breach of the contract alleged, they must be specially pleaded, in order that the defendant may not be taken by surprise at the trial. And in case such damages are not specially pleaded, in accordance with this rule, evidence in regard thereto will be excluded at the trial, and the plaintiff will be confined to his general damages." Id. 741–743.

It follows from what has been said that so much of the thirteenth findings as bears upon such damages and is based upon such improper evidence must be disregarded. The damages thus referred to, of course, only include such, if any, as the plaintiffs may have sustained by reason of their being prevented by the defendant from performing the balance of the contract.

8. But the plaintiffs had fully performed the contract on their part for two months and seventeen days before the defendant directed them to remove its cards from the street cars in question. For such partial performance they are certainly entitled to recover the contract price. The price so

stipulated in the contract is $470 per month, to be paid at the end of each month. There is nothing in the contract that can authorize a division of such monthly instalment. The result is that the plaintiffs are entitled to recover only three monthly instalments under the contract, with interest on each instalment from the time it became payable by the terms of the contract. For the aggregate amount of such instalments and interest they are entitled to judgment in this action.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiffs and against the defendant for the amount indicated in this opinion.

CASSODAY, C. J. When this case was decided, May 20, 1903, the question as to the amount of costs which the plaintiffs were entitled to recover was considered by the court, and it was then held that the plaintiffs were only entitled to recover such costs as were allowable under the statutes in actions at law on contract. The failure to consider the question in the opinion filed was the fault of the writer.