LINCOLN and others, Respondents, vs. CHARLES ALSHULER MANUFACTURING COMPANY, Appellant.

*March 18—April 5, 1910.*

*Sales: Executory contract: Breach by vendee: Damages: Right of vendor to sell the goods: Sale on credit: Insolvency of vendee: Rights of vendor: Appeal: Harmless error: Form of action.*

1. If an executory vendee refuses to carry out his agreement to purchase a specified quantity of manufactured goods not identified and made specific at the time of the agreement nor thereafter before the refusal, the remedy of the executory vendor is for damages for the breach, not for the purchase price.

2. The foregoing follows the rule that, ordinarily, any person has the right to breach his mere executory agreement and submit to legal damages therefor.

3. The situation supposed in No. 1 is unlike where there is a sale *in præsenti*, there having either been a transition of title or something equivalent thereto before the breach; or where an article to be manufactured to order, prior to the breach, was, in whole or some substantial part, created and has no general marketable quality. It is one where the particular goods to satisfy the agreement have not, prior to the breach, been segregated from a stock of such goods, or the materials for the manufactured product are yet to be acquired by the executory vendor or are on hand as ordinary manufacturer's stock, and are available to such vendor without special loss either for sale or incorporation into manufactured articles for others.

4. In such a case the general rule applies that recoverable damage is limited to such as may be reasonably said to have been in mutual contemplation at the inception of the contract as the probable result of a breach of it.

5. The more particular rule applicable to the situation supposed is that the recoverable damage is the difference between the agreed price and the fair market value of the property at the time of the breach and place for delivery, subject to the exception that in case of there being no such market value at such place, such value may be determined at some other place, just to the executory vendee.

6. Where a mere agreement to purchase is repudiated by the executory vendee before tender of the subject of sale or before the executory vendor has done all required of him in order to a

transition of title, he cannot liquidate his damages by selling the subject, or an ostensible subject, of the agreement as the property of the executory vendee, but a sale fairly conducted by him of the actual, or a similar, subject might create evidence on the question of damages.

7. In case of an executory contract to sell and deliver goods on credit, the seller may, if in the meantime the purchaser becomes insolvent or shows evidence of incapacity to pay for the property, by defaulting on existing indebtedness, eliminate such element and treat the contract as an agreement for a cash sale.

8. In the circumstances stated in the last foregoing, the executory vendor cannot eliminate any other element than that of credit; the feature as to time and place of delivery, he must comply with, at his peril of being liable for a breach.

9. In an action, in form, to recover the purchase price of chattels, where the cause of action is in fact for damages for breach of the agreement to purchase, a recovery, in form, upon the theory of the pleader will not be disturbed on appeal if the record shows the judgment is not in excess of the amount plaintiff would have recovered had he proceeded in the proper way.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Modified and affirmed.*

Action, in form, to recover a balance due on contract, with some allegations in the complaint appropriate to an action for damages for nonfulfilment of an agreement to purchase. The issues were thus decided as to facts: (1) Plaintiffs sold defendant and defendant purchased from plaintiffs, on July 20, 1907, fifteen cases of cheviot cloth, to be manufactured and delivered at seven and one-quarter cents per yard, five cases October 5, 1907, five cases November 15, 1907, and five cases December 15, 1907, of which the first five were delivered and paid for, and also sold defendant and it purchased twenty-five cases of like goods about July 24, 1907, for December, 1907, delivery. (2) The place of delivery agreed upon was defendant's factory at Racine, Wisconsin, or other factories to be designated by it. (3) Under the agreement, shipping directions were necessary and de-

fendant agreed to give such. (4) Defendant refused to give shipping directions for any of the goods subsequent to shipment of the first five cases which were duly forwarded and paid for, and refused to receive the balance or any part thereof, wherefore plaintiffs were prevented from making delivery though they were ready and willing to do so, which defendant well knew. (5) April 1, 1908, plaintiffs notified defendant that, unless it received and paid for the balance of the goods by April 10th thereafter, they would sell the same in the open market for the best price obtainable and hold defendant for any deficiency between the amount received and the sale price. Pursuant thereto, July 27th thereafter, plaintiffs sold the goods, using reasonable care to obtain the best price practicable, realizing $4,032.16, which they applied upon the sale price, leaving $1,447.36, subject to the freight charges which plaintiffs would have had to pay, had the goods been accepted at the agreed destination, or a net loss of $1,287.82.

Upon such facts the court concluded that plaintiffs were entitled to recover of defendant the aforesaid balance with interest, amounting to $1,484.55, and costs. Judgment was entered accordingly.

The finding that there was a sale of goods to defendant was based on the making and acceptance of two orders, each in this form:

```
          Sold to Chas. Alshuler Mfg. Co.
          Racine, Wis.
          Terms 2–10 60 ex.
          Ship frt. pd.
          Bill                 Dup.
          Bill Lading.
          Shipments as below.
          15 cs. Saxon Cheviots
                       blue @ 7¼
          5 Oct.  15
          5 Nov.  15
          5 Dec.  15
          Pack in cases.
          2000 yds.
          Accepted for Seller.   W. A. West.
          Accepted for Buyer.
```

The only difference between the two orders was the number of cases and time for shipment.

The evidence was to this effect: Shipping orders were given as to ten cases, but there was delay in the matter on the part of plaintiffs. Before plaintiffs were ready to make shipment they were informed by defendant that, on account of the financial condition of the country and its condition in that respect, it would be unable to take the twenty-five cases and requested plaintiffs to consent to a cancellation of the order therefor. At such time defendant was in default to plaintiffs on the theory that it was bound to pay for goods at dates specified in the order, whether they had been forwarded or not. On such theory plaintiffs refused to ship the ten cases, at the same time refusing to cancel the order for twenty-five cases. Many communications passed between the parties, defendant at no time refusing to take and pay for the ten cases when delivered as agreed upon, but insisting that it would not take any of the twenty-five cases, resulting in plaintiffs refusing, under any circumstances, to cancel the order therefor, and refusing to ship the ten cases except upon payment therefor, and defendant persisting in its refusal to accept any of the twenty-five cases, and requesting plaintiffs to dispose of them for its account, because of their superior opportunity for realizing thereon. In that situation plaintiffs renewed their refusal to consent to a cancellation of the order for the twenty-five cases, continued to neglect to ship, or offer to ship the ten cases, and demanded payment for the entire thirty-five cases, but offered to consider any proposition made to give defendant additional time. Thereupon, and on March 19, 1908, defendant notified plaintiffs that it would take the twenty-five cases, paying therefor by July 31st upon condition of the goods being perfect in every particular and freer from defects than goods previously shipped, and on such condition ordered shipment of five cases at once. Plaintiffs thereupon positively refused to ship any goods in

advance of payment for the whole thirty-five cases and sent their account to defendant accordingly, making claim for the full delivered price and on over 4,000 yards of goods in excess of thirty-five cases of 2,000 yards each, following it by a draft, which was refused payment. Prior to such refusal plaintiffs declined to forward any of the ten cases though they had in hand urgent shipping orders therefor, till the draft was paid. Thereafter circumstances occurred detailed in the findings respecting sale of thirty-five cases of goods, corresponding as to amount of cloth therein to the bill as aforesaid, ostensibly as defendant's goods and on its account, liquidating their pretended claim to the amount found by the court, for which judgment was rendered.

For the appellant there was a brief by *Kearney, Thompson & Myers,* and oral argument by *W. D. Thompson.*

For the respondents there was a brief by *Simmons & Walker,* and oral argument by *M. E. Walker.*

MARSHALL, J. This case seems to have been disposed of on a wrong theory. The contracts, notwithstanding words of sale *in præsenti,* were obviously mere agreements to sell in consideration of agreements to purchase. They did not contemplate the passing of title to the goods till arrival at the delivery point in Wisconsin, freight paid. Therefore, as the goods were never so delivered or tendered, the contingency never happened rendering it competent for respondents to sell the goods as the property of appellant. They merely sold their own property.

Again—as the contracts were mere agreements to sell and agreements to purchase; neither sales *in præsenti,* nor agreements to manufacture and sell specific articles, or sell specific identified articles, but to sell quantities of goods, manufactured or unmanufactured at the time, of the ordinary output of the factory, and the second agreement was not only repudiated by the executory vendee before any goods called for

thereby were set aside as its particular goods, but before they were tendered at the delivery point, so that the contracts were never completed by the executory vendors so as to enable them to treat the property as, in any sense, that of such executory vendee, and, after its repudiation, the second contract could not have been performed by such vendors so as to enable them to treat the goods as property of such vendee or enhance its liability for the breach—respondents' cause of action was not for a balance due upon a sale of goods, but for damages for breach of contract, determinable as of the time of the breach, and limited according to the familiar rule that such damages can only be such as may be reasonably considered to have been in mutual contemplation by both parties at the time of making the contracts as the probable result of the breach thereof.   *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Serfling v. Andrews,* 106 Wis. 78, 81 N. W. 991; *Malueg v. Hatten L. Co.* 140 Wis. 381, 122 N. W. 1057.

The optional rights of action suggested in *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368, do not all apply to such a situation. There the article was specially manufactured and set aside for the vendee at the delivery point so it was competent for the vendor to deal therewith as the property of such vendee. Here the goods could not be dealt with as property of the executory vendee without its consent till the executory vendors had done everything on their part, so that in a case of destruction of the goods by fire or otherwise the loss would have fallen on the former because of the title having passed.

The rule formulated in *Pratt v. S. Freeman & Sons Mfg. Co., supra,* is elementary, but was there adopted, as to its phrasing, from *Van Brocklen v. Smeallie,* 140 N. Y. 70, 35 N. E. 415, where the facts were that the title to the property had actually passed to the vendee, leaving nothing executory but the mere act of delivery. The court held that the rule

applies in cases where the title passes *in præsenti* and where the contract is executory, but the property is identified, and there is a valid tender as contemplated · in the sale contract and a refusal to perform.    The facts of this case do not satisfy either of such situations.    The title did not pass at the date of the contract, the property was never tendered at the agreed place of delivery and was not specific prior to the breach.

Again, it is an elementary principle that, in case of a bargain and sale of goods, not specific, and before they are set aside for the vendee, he notifies the executory vendor that he elects to and does cancel the contract and will not receive the goods, he cannot be made liable for the purchase price, as on a sale of goods, but only for damages for his breach of contract.    That being upon the theory, often declared, that, ordinarily, any person has a right to breach his mere executory agreement and submit to damages therefor.    *Ward v. Am. H. F. Co.* 119 Wis. 12, 96 N. W. 388; *Malueg v. Hatten L. Co., supra.    Unexcelled F. W. Co. v. Polites,* 130 Pa. St. 536, 18 Atl. 1058, is a good illustrative case.

The facts in the last case cited are on all-fours with those in this case.    The court remarked that:

"Whilst the manifest tendency of the cases in the American courts, now, is to the doctrine that when the vendor stands in the position of a complete performance on his part, he is entitled to recover the contract price as his measure of damages, in the case of an executory contract for the sale of goods not specific, the rule undoubtedly is that the measure of damages for a refusal to receive the goods is the difference between the price agreed upon and the market value on the day appointed for delivery."    And the court might well have added, to accurately round out the rule, at the place of delivery.

In this case, as before indicated, the agreements were with reference to goods from the ordinary output of a manufactory to be selected from stock to be accumulated or on hand.

That is plain. The second agreement was repudiated about a month and a half before expiration of the time for delivery and some three weeks before delivery could have been requested. It is very evident that no goods had been set aside for appellant, even at the necessary starting point of the contemplated transit, prior to the notification that the second agreement would not be carried out by appellant. It may well be that if they existed at all it was as a part of the general stock. So respondents, in any view, never had a cause of action against appellant for the contract price of the twenty-five cases of goods.

As to the ten cases it seems the finding that appellant refused to receive them is contrary to the evidence. As we read the record, appellant ordered the ten cases forward, urgently, but respondents refused to send the same without prepayment, not only for the ten cases, but for the thirty-five cases. In face of the letters found in record ordering forward the ten cases and the reply, in effect, refusing to ship except upon condition of payment for the thirty-five cases, it is not perceived how the finding that shipments were not made because no shipping directions had been given, and because appellant had refused to receive any of the goods, has any support whatever. The declination to ship the ten cases, was upon the sole ground that the sale price for the whole thirty-five had not been paid. The court must have assumed that circumstances existed when the goods were ordered forward, authorizing the executory vendors to eliminate the element of credit and demand prepayment before parting with possession of the goods, under the familiar rule applied in *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368, though there is no finding of insolvency or of any fact justifying even the elimination from the contract of the element of credit.

True, in case of an executory agreement for sale of property on credit, if before the time for delivery the executory

vendee becomes insolvent, or shows evidence of insolvency by defaulting in payment of existing indebtedness, he may insist upon completion of the sale contract, eliminating the element of credit, but not eliminating any other element of the contract, as that in this case to deliver the subject of the sale f. o. b. cars at a point distant from the location of the goods at the time of the sale or that of the contemplated commencement of the transit to the purchaser. Much less can the vendor, as was done here, not only eliminate the element of credit, but a material part of the contract in addition by imposing the condition of payment for goods under other contracts, especially goods not recoverable for, in any event, because of the agreement to purchase the same having been seasonably repudiated, leaving the vendor only his action for damages. So the record not only does not support the finding, but negatives any right to recover on the first contract either the purchase price of the goods or damages for breach of contract. That contract was breached by respondents, not by appellant.

As to the twenty-five cases, it seems the finding that appellant repudiated the contract is well supported, and also the evidence seems conclusive that appellant never after first taking that attitude changed it by agreeing to take the goods as promised, or withdrew the request for respondents to liquidate their damages by selling the goods in their discretion for its account. It is quite likely that had appellant, after breaching the contract, seasonably changed its attitude, respondents would have refused to start the goods for delivery at the agreed termination of the transit, only eliminating the element of credit, so as not to lose control of the property before receiving payment therefor or stood ready to do so, but would have insisted upon payment before starting the goods on the journey, in which case they could not have recovered damages, but on the contrary might have been liable for damages for their breach of contract. How-

ever, that course was not taken so the right of respondents to reimbursement for damages for the breach, which became fixed by the refusal to receive the goods before and at the agreed time for forwarding, remained to the end.

The measure of damages, by the ordinary rule, is the difference between the amount the appellant agreed to pay for the goods and the reasonable market value thereof at the agreed delivery point in Wisconsin at the time of the breach, less the freight, which respondents agreed to, but did not, under the circumstances, have to pay. That is subject to the exception that where there is no fair market value at the delivery point, such value may be determined at some other point, just to both parties, which in this case not only seems, as above, to have been the place where the goods were sold, but the one consented to by appellant by the request for a sale thereof on its account.

It must be remembered that this is not a case of manufacture of an article to order, which was not a stock article having a general marketable quality, in which case sometimes the full price is the measure of damages for breach of the contract to accept after the article has been completed, or substantially so, nor a case where the article though of a general marketable quality was completed and ready for delivery before the breach. It is a case where, so far as the record shows, while the material for the proposed sale was still the property of the executory vendors and in their hands, or the subject formed part of the general stock of manufactured goods at the factory, the vendee refused to perform. In such a case the profits on the contract, is the true measure of recovery.

Now while this was not a case for liquidation of damages by a sale of goods, substantially as property of the vendees, as in *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368; *Van Brocklen v. Smeallie,* 140 N. Y. 70, 35 N. E. 415; and *Moore v. Potter,* 155 N. Y. 481, 50 N. E. 271, appellant has no reason to complain, (1) because it con-

sented, in advance, to such liquidation; (2) because, in any event, such a sale is, in effect, only a manner of making evidence of damages, which in this case, were the same whether the action be regarded as one on contract for balance of the purchase price, or for mere damages for breach of contract; and (3) because the evidence shows that the sale price was the fair market value at the place of sale and in excess of what could have been obtained at the agreed delivery point, or at the nearest point thereto where the goods were fairly marketable.

Again, while the time the market value was determined as a basis for recoverable damages, was several months after the date of the breach, which fixed the rights of the parties, that is rather to appellant's advantage than otherwise, since the evidence is to the effect that property of the sort increased in value in the meantime, rather than decreased.

Further, while the action was for the balance of the purchase price for goods instead of a mere action for damages for breach of contract, as it should have been, that is not to appellant's prejudice, since the recoverable amount, under the circumstances, would be no different in one case than in the other.

It follows that the judgment must be considered as one for damages for breach of contract to buy goods and erroneous as to the ten cases. It must, therefore, be reduced as of the time of its rendition to the extent of two sevenths, to wit, to the sum of $1,060.40, and further reduced by the amount of the damages awarded on the excess of goods in the twenty-five cases over 2,000 yards per case, which seems to be 4,096½ yards, on which damages were incorporated in the judgment, including interest, of substantially $79.49, making the amount for which judgment should have been rendered $980.91, to which sum it is reduced as of its date. As so reduced it should be affirmed.

*By the Court.*—So ordered.