HAUETER, Appellant, vs. MARTY and another, Respondents.

*February 5—February 24, 1914.*

*Sales: Refusal of vendee to accept: Remedies of vendor: Election: Measure of damages: Time of breach: Market value: Evidence.*

1. Under an executory contract for the sale, at a stipulated price, of a specific article of personal property to be delivered at a particular place and at a time determinable by the vendor, if the vendee, upon being notified of the time for delivery, either refuses to accept the property unless upon a material condition not named in the contract, or by neglecting to make any provision for accepting manifests an intention not to accept, the vendor may choose between three courses of action: He may (1) hold the property for the executory vendee and sue for the purchase price and expenses of caring for it; or (2) sell the property as agent for the vendee and recover the difference between the contract price and the fair market value of the property at the place of delivery and time of the breach; or (3) keep the property and recover the difference between the contract price and the fair market value at the time and place for delivery. .

2. Having once chosen one of such courses of action, either actually or constructively, the vendor's rights must be vindicated by that method.

3. But where the contract does not relate to specific articles which can be treated as the property of the executory vendee before or at the time of the breach, the vendor's only remedy is to recover the excess, if any, of the contract price over the fair market value at the agreed time and place of delivery.

4. Where plaintiff sold cheese to be delivered at a certain railway station when marketably matured, and thereafter notified the vendees that delivery would be made on a certain date, but the vendees before that date gave notice that they would not accept the cheese until they had first inspected it at the place to which it was to be shipped from said station, and on the date named failed to attend at said station or receive the cheese, there was a breach of the contract on or before said date.

5. If in such case there was no market value for the cheese at the time and place for delivery, the market value at advantageous points for dealing in such property, in connection with necessary expenses in reaching such markets, would be proper evidence of fair value.

6. A sale of the cheese by plaintiff five months after the breach, to which the vendees were not made parties by notice and which was not characterized by any of the essentials to give it evidentiary value, was in this case without probative force upon the question of damages.

APPEAL from a judgment of the circuit court for Green county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Action for damages for breach of contract. The cause was tried by the court. The findings are within the issues raised by the pleadings. The facts as found, so far as material, are these: It was mutually agreed between plaintiff and defendants that the latter should take of the former a quantity of cheese, July 1911 make, including all his one-pound block limburger, at ten and one-half cents per pound, the same to be delivered at Ridgeway railway station when marketably matured, and there received. The last part of the cheese was ready for delivery July 19, 1911, and defendants were notified that delivery would then occur and to be ready to receive the same. The latter thereupon notified plaintiff that they would not accept the cheese unless first permitted to examine it in Chicago and thereby finding it to be in proper condition.

Plaintiff thereafter held the cheese near Ridgeway until about August 15, 1911, then placed the same in cold storage in Chicago, insured in his own name, where he caused the same to be kept until December 15, 1911, and then sold for four and three-fourths cents per pound. At the time of the breach of contract, July 19, 1911, and for several months thereafter, such cheese as that involved was marketable at Ridgeway station at a price in excess of what defendants agreed to pay, while the market price for such cheese during the same time in Chicago was somewhat more and around thirteen cents per pound. After defendants refused to accept according to the contract, plaintiff could readily have disposed of the cheese for a full price at the agreed place of delivery; but made no effort to do so.

Upon such facts the conclusion was reached that plaintiff was without any substantial ground for complaint because he had not suffered any damage by reason of the breach of contract complained of. Judgment was thereupon rendered in defendants' favor dismissing the action with costs.

For the appellant there was a brief by *Fiedler & Fiedler,* and oral argument by *E. C. Fiedler.*

*E. D. M'Gowan,* for the respondents.

MARSHALL, J. In case of a person offering, for a stipulated price, to sell and deliver to another at a particular place and at a time, depending upon circumstances determinable by such person, any specific article of personal property, and such other accepts the offer and, thereafter, such person names the time when delivery will be made, but such other either notifies such person that he will not accept the property under the contract, except upon a material condition not named therein or neglects to make any provision for duly accepting, thus manifesting a refusal to comply with the contract, a remediable wrong thereby accrues to the executory vendor

for which the law affords him a choice of three courses of action.

According to the facts of this case, as found by the trial court and as claimed by counsel for appellant as well, a wrong was perpetrated by respondents. Let it be supposed within the stated principle appellant were to make the choice referred to, the law will not permit one to be fickle about such a matter. It gives him the right of choice, but no right to choose but once. So having chosen, either actually or constructively, his rights must be vindicated by the one method or not at all, judicially.

The three courses of action mentioned are these:

(a) Hold the property *in persona* or by some appropriate agency for the executory vendee and sue upon the contract for the purchase price and reasonable expenses incurred in caring for the same.

(b) Sell the property as agent for the executory vendee and sue to recover the difference between the contract price and the fair market value of the same at the agreed place for delivery at the time of the breach, in which case the price realized by the sale on the executory vendee's account, if conducted with any reasonable degree of fairness with reference to fixing the fair market value at the vital time mentioned, will be evidence thereof, of more or less significance according to circumstances. *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368; *Gross v. Heckert,* 120 Wis. 314, 97 N. W. 952.

(c) Keep the property and recover the difference between the contract price and the fair market value at the time for and place of delivery.

Now whether this case be strictly within the principle stated is not very clear. It only applies to sales of specific articles which are in possession of the seller and can be, or articles which are, before the breach, set aside for the ex-

ecutory vendee so title can actually or constructively vest in him. Where that is not the case but the contract is for articles to be manufactured in the ordinary course of producing goods for the trade and there is a notification before anything shall have been done to pass title, then the choice of options mentioned does not exist. That is, a party to an executory contract for the sale of personal property may, of right so to speak, commit the wrong of breaching it and become liable for damages actually suffered. *Ward v. American H. F. Co.* 119 Wis. 12, 96 N. W. 388; *Malueg v. Hatten L. Co.* 140 Wis. 381, 122 N. W. 1057; *Lincoln v. Charles Alshuler Mfg. Co.* 142 Wis. 475, 125 N. W. 908. In such a case— where the contract does not relate to specific articles which can be treated as the property of the executory vendee before or at the time of the breach—he has but the one remedy to recover the difference between the contract price and the fair market value at the time and place for delivery (*Lincoln v. Charles Alshuler Mfg. Co.* 142 Wis. 475, 481, 125 N. W. 908), in case of such difference indicating a loss. If it does not so indicate, because of such fair market value being at least equal to the contract price he has no remedy because of not suffering any damage, as illustrated in *Potter v. Necedah L. Co.* 105 Wis. 25, 35, 80 N. W. 88, 81 N. W. 118.

It makes very little, if any, difference in this case whether appellant was entitled to make a choice of remedies because the action was brought for damages for breach of contract and the measure thereof is the excess of the contract price, if any, over the fair market value at the agreed time and place of delivery. As the court below found, there was no such excess, there was no damage to appellant, at most, only a technical wrong. It follows, necessarily, that the judgment is right if the findings are supported by the evidence. The rule governing the matter is conceded to have been rightly applied. The bone of contention is as to the time of the breach. That fixed the rights of the parties.

We cannot agree with counsel that the findings which, in effect, fix the time of the breach at not later than July 19, 1911, are wholly without evidence. That is grounded upon the theory that an express refusal to accept the property was required and that none occurred until in December, 1911. No such refusal was necessary. Neglect to attend at the time set by appellant under the contract, to wit, July 19, 1911, for delivery, under such circumstances as to plainly indicate a determination not to accept, was just as effective as an express refusal of a tender then made would have been. Moreover, before the time for the tender, appellant was notified by respondents, in the most unequivocal terms, that they would not accept the property until having first inspected the same in Chicago, and found, thereby, that it was in proper condition. That fixed the rights of the parties. Appellant evidently so understood it, as he did not thereafter tender the property at the place required by the contract.

It follows that the findings of the trial court as to the time of the breach cannot be disturbed; that the agreed time for delivery as set by appellant under the contract was July 19, 1911, and the contract place for delivery was Ridgeway station. That being the case, the fair value at such time and place was the material point to be determined. We are unable to find evidence that it was less than the contract price. Let it be conceded that there was no market value prevailing at the particular time and place except with reference to a sale for shipment and resale in Chicago or some other distant point. That does not make the market value at such distant point the material thing. The fair value at the proper time and place for delivery would be still the material thing and the market value at such distant point but an evidentiary circumstance. The real question is, What was the reasonable value for sale at the particular time and place? That called for the best evidence the nature of the case was susceptible of. The market value at such time and place, in case of there being

any, was the best evidence, but if there was none then the market value at advantageous points for dealing in such property, in connection with necessary expenses in reaching such markets, would be proper evidence.

In any view of the case which we can take, it seems that the finding as to the fair market value of the property at the time and place for delivery, the breach having taken place at that time at least, is well supported. If the market value at Chicago at that time were important, it would support the conclusion as to the value at the vital time and place. The circumstance of a sale some five months later to which respondents were not made parties by notice and which was not characterized by essentials to give it evidentiary value, really proved nothing, unless it did that the property was not of the kind originally contracted for or had been kept under such conditions that it had deteriorated in value approaching fifty per cent.

*By the Court.*—Judgment affirmed.